Case 1:21-cr-00498-CJN   Document 1-1

Case: 1:21-mj-00534
Assigned To : Faruqui, Zia M.
Assign. Date : 7/21/2021
Description: COMPLAINT W/ ARREST WARRANT

## STATEMENT OF FACTS

I am a Special Agent with the Federal Bureau of Investigation and have been so employed in that capacity since June 2004.  Currently, I am assigned with investigating criminal activity in and around the United States Capitol grounds on January 6, 2021.  Through my training and experience, I have become familiar with the tools used in the investigation of such criminal activity, including surveillance, evidence collection, and conducting interviews of witnesses, informants, and others with knowledge of the offenses.  As a federal agent, I am authorized to investigate violations of laws of the United States, and as a law enforcement officer, I am authorized to execute warrants issued under the authority of the United States.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police.  Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police.  Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.  On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, SE, in Washington, D.C.  During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020.  The joint session began at approximately 1:00 p.m.  Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection.  Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol.  As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured.  Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.  Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.  Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

### Identification of Taake

On or about January 9, 2021, the FBI received a tip from an individual ("Witness 1") who provided information on a Capitol rioter by the name of Andrew Taake, owner of Hi-Flow Houston. Witness 1 messaged Taake on a dating app, Bumble, while he was in Washington, D.C. Although Taake and Witness 1 never met in person, Taake discussed his participation in the riot with Witness 1 and sent Witness 1 several pictures of himself, including a picture of himself taken on January 6, 2021, after he was allegedly pepper sprayed by law enforcement officers. Witness 1 said Taake admitted to being inside the U.S. Capitol for approximately 30 minutes. Below is a screenshot of messages between Taake and Witness 1, including the picture of Taake taken "about 30 minutes after being sprayed."



In addition, Bumble provides users with the location information of other individuals using the application.  Witness 1 provided a screenshot of Taake's January 6, 2021, location information to the FBI.  The application places Taake in Alexandria, Virginia, a town nearby Washington, D.C. on January 6, 2021.



Witness 1 also provided the below screenshot of an image from Taake's Bumble account to the FBI.



Following this tip, the FBI reviewed flight records for Taake and determined that he flew Spirit Airlines on January 5, 2021, from George Bush Intercontinental Airport, Houston, Texas to Baltimore/Washington International Airport, Baltimore, Maryland and returned to Houston on January 8, 2021.

The FBI also located publicly posted videos and photographs showing Taake at the U.S. Capitol.  Several of these images show Taake using what appears to be a metal whip and pepper spray to attack law enforcement officers.  All of the photographs on page 5 of this documents are photographs the FBI recovered from public postings.










On May 28, 2021, the FBI showed the two photos immediately above, obtained through FBI searches of social media, to a FedEx delivery driver who had, minutes before, delivered a package to Andrew Taake at his home address. The delivery driver identified Taake as the person

appearing in these photos.  In addition, physical surveillance was conducted at Taake's home address and a black Toyota Tundra bearing a Texas license plate was observed in the driveway. The vehicle is registered to Andrew Taake at the same address.

Your affiant has also reviewed body-worn camera provided by the Metropolitan Police Department ("MPD").  These videos show that, by 1:16 p.m., a police line had formed on U.S. Capitol grounds to prevent rioters from entering the U.S. Capitol building.  The MPD officers stood behind a barricade of bike racks, with the rioters on the other side of the bike rack barricade. At approximately 1:16 p.m., the MPD body-worn camera shows that Taake stepped forward toward the bike racks and the MPD officers.  He subsequently raised his arm and pepper sprayed the  law enforcement officers.  Immediately after the attack, Taake retreated back into the crowd of rioters.  Screenshots from these videos are shown below.  Taake is circled in red.





  I have reviewed additional body-worn camera provided by the MPD that shows Taake engaging in a second assault on law enforcement officers. In these additional videos, at approximately 2:00 p.m., MPD officers attempted to make their way through the crowd of rioters, to reinforce the law enforcement officers that were preventing rioters from entering the U.S. Capitol building. Around 2:01 p.m., rioters clustered in front of the MPD officers, preventing them from moving forward through the crowd. About one minute later, at 2:02 p.m., Taake emerged from the crowd and can be seen striking officers with a weapon that appears to be a whip. After the attack, Taake retreated back into the crowd. Screenshots from the body-worn camera videos are shown below. Taake is circled in red.





The weapon Taake is wielding appears to be similar to the whip-like, self-defense tool seen below.

Your affiant also reviewed security camera footage from inside the U.S. Capitol.  In these videos, Taake can be seen entering and walking through the U.S. Capitol.  Screenshots from these videos are shown below.  Taake is circled in red and can be seen openly holding the whip-like weapon in several of the screenshots (whip-like weapon is circled in several of the images below).









Your affiant has compared the above images with Taake's Texas Driver's License picture. In addition, on July 15, 2021, your affiant conducted an in-person interview of Taake. After the interview, I again reviewed the above images. Based on my observations of Taake during the in-person interview, I have determined that Taake is the individual that is circled in red in the images above from MPD's body-worn camera and from the U.S. Capitol security camera footage and the individual pictured in the open-source images above.

Finally, the FBI identified Taake's cellular telephone number, a number ending in -4868. According to Spirit Airlines, Taake provided the phone number ending in -4868 as his contact number when booking his January 5, 2021, flight to Washington, D.C. In addition, the Facebook account for Taake's company, Hi-Flow Houston, lists the same phone number as the contact number. The Verizon cellular telephone number, ending in -4868, was cross-referenced against cellular tower records that were obtained through a search warrant served on Verizon on January 6, 2021. In and around the time of the incident, a phone associated with the Verizon telephone number ending -4868 was identified as having utilized a cell site consistent with providing service to a geographic area that included the interior of the U.S. Capitol building.

Based on the foregoing, your affiant submits that there is probable cause to believe that Taake violated 18 U.S.C. § 1512(c)(2), which makes it a crime to obstruct, influence, or impede any official proceeding, or attempt to do so. Under 18 U.S.C. § 1515, congressional proceedings are official proceedings.

Your affiant submits that there is also probable cause to believe that Andrew Taake, on two separate occasions, violated 18 U.S.C. §§ 111(a)(1) and (b), which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in section 1114 of title 18 while engaged in or on account of the performance of official duties and using a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component).  Persons designated within section 1114 include any person assisting an officer or employee of the United States in the performance of their official duties.

Your affiant submits there is probable cause to believe that Taake violated 18 U.S.C. § 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.  This includes the Joint Session of Congress where the Senate and House count Electoral College votes.

Your affiant submits that there is probable cause to believe that Taake violated 18 U.S.C. §§ 1752(a)(1), (2) and (4), which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; (2) knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; and (4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Finally, your affiant submits there is also probably cause to believe that Taake violated 40 U.S.C. §§ 5104(e)(2)(D)(E)(F) and (G), which makes it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (E) obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings; (F) engage in an act of physical violence in the Grounds or any of the Capitol

Buildings; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

Amy L. Avila
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 21st day of July 2021.

ZIA M. FARUQUI
U.S. MAGISTRATE JUDGE