IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 21-CR-498 (CJN) |
|  | : |  |
| v. | : | 18 U.S.C. § 111(a)(1) and (b) |
|  | : |  |
| ANDREW TAAKE, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Andrew Taake, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.      The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2.      On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3.      On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday,

November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4.      As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5.      At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6.      At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7.      Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

1.      The defendant, Andrew Quentin Taake, lives in Houston, Texas. On January 5, 2021, the defendant traveled from Houston, Texas to Washington, D.C., via plane. The purpose of the defendant's trip to Washington, D.C. was to protest Congress' certification of the Electoral College vote count.

2.      On January 6, the defendant entered the restricted Capitol grounds.   At approximately 1:16 PM, the defendant sprayed a line of law enforcement officers from the Metropolitan Police Department (MPD) with bear spray that he brought to the Capitol. The law enforcement officers were attempting to prevent rioters from progressing toward the Capitol building.

3.      At approximately 2:00 PM, additional MPD officers attempted to make their way through the crowd of rioters to reinforce the law enforcement officers that were preventing rioters

from entering the U.S. Capitol building. Around 2:01 p.m., rioters clustered in front of the MPD officers, preventing them from moving forward through the crowd. At approximately 2:02 PM, Taake emerged from the crowd of rioters and attacked an MPD officer while holding a whip-like weapon.

4.      Taake entered the U.S. Capitol building through the Senate Wing Door at approximately 2:20 PM. At 2:35 PM, the defendant walked through the Crypt and hallways near the Crypt, brandishing the whip-like weapon.

5.      On January 6, 2021, after the riot, the defendant messaged an individual on a dating application about the events earlier that day. When asked whether he was "near all the action," the defendant responded, "Yes, From the very beginning. I was pepper sprayed, tear gassed, had flash bangs thrown at me, and hit with batons for peacefully standing there." He then sent a photograph of himself that he describes as "[a]bout 20 minutes after being pepper sprayed. Safe to say I was the very first person to be sprayed that day. . . all while just standing there."

### *Elements of the Offense*

6.      The parties agree that Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b), requires the following elements:

   a.  First, the defendant assaulted, resisted, opposed, impeded, intimidated, or interfered with certain officers.

   b.  Second, the defendant did such acts forcibly.

   c.  Third, the defendant did such acts voluntarily and intentionally.

   d.  Fourth, the officers assaulted, resisted, opposed, impeded, intimidated, or interfered with were officers of the United States or were assisting officers of the United States who were then engaged in the performance of their official duties.

e. Fifth, in doing such acts, the defendant intentionally used a deadly or dangerous weapon.

## *Defendant's Acknowledgments*

7.     The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that on January 6, 2021, he assaulted, resisted, opposed, impeded, intimidated, or interfered with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of their official duties. The defendant admits that did so by deploying bear spray, a dangerous weapon that was capable of causing serious bodily injury under 18 U.S.C. § 111, at a line of MPD officers who were assisting USCP.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     *s/ Madison H. Mumma*
MADISON H. MUMMA
Trial Attorney
N.C. Bar No. 56546
U.S. Department of Justice
Criminal Division,
Public Integrity Section
202-913-4794
madison.mumma@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Andrew Taake, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 12/12/23

Andrew Taake
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 12/13/23

Michael Lawlor
Attorney for Defendant

Date: 12/13/23

Nicholas Madiou
Attorney for Defendant