IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No.  21-cr-498-CJN |
| | : | |
| ANDREW QUENTIN TAAKE | : | |
| | : | |
| Defendant. | : | |

## SUPPLEMENT TO DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant Andrew Taake ("Mr. Taake"), by and through his counsel, Michael E. Lawlor, and Brennan, McKenna & Lawlor, Chtd., respectfully submits the following Supplement to Defendant's Memorandum in Aid of Sentencing.

**I.   Background**

On July 21, 2021, the United States charged Mr. Taake by way of Criminal Complaint with offenses related to the events at the Capitol of January 6, 2021. (ECF No. 1.) On July 23, 2021, Mr. Taake was arrested in the Southern District of Texas. He has remained detained since that time. On December 20, 2023, Mr. Taake pled guilty pursuant to a written Plea Agreement to Count Three of the Superseding Indictment which charged him with assaulting, resisting, or impeding certain officers using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b). (ECF Nos. 66, 67, 68.) The Plea Agreement contained an estimate of the advisory guidelines

1

range as negotiated by the parties. The parties estimated that an adjusted offense level of 26 applied in the case. (ECF No. 67 at 3.) The parties further anticipated that Mr. Taake would receive a three-level reduction in offense level based upon his acceptance of responsibility. (*Id.*) On February 16, 2024, the United States Probation Office filed the draft PSR in this case. (ECF No. 69.) The draft PSR calculated a final adjusted offense level of 23 after crediting Mr. Taake for his acceptance of responsibility.[1] (*Id.* ¶ 43.) In response to the draft PSR, the Government submitted an objection to awarding Mr. Taake any downward adjustment for acceptance of responsibility. The final PSR merely adopted the Government's view with no independent analysis or reasoning. (ECF No. 71 ¶¶ 30, 30a, 30b, 40, 41.)

On March 21, 2024, the Government filed its Sentencing Memorandum. (ECF No. 74.) In its Sentencing Memorandum, consistent with its obligations under the terms of the Plea Agreement, the Government argued that a pre-acceptance of responsibility offense level of 26 applies in this case. (ECF No. 74 at 30.) The Government also argued against any adjustment for acceptance of responsibility. (*Id.* at 30-32.) On April 16, 2024, Mr. Taake filed his Sentencing Memorandum. Consistent with the terms of the Plea Agreement, Mr. Taake argued that a pre-acceptance of responsibility offense level of 26 applies. Mr. Taake further argued

---

[1] Both the draft and final PSR calculated the pre-acceptance of responsibility offense level in accordance with the terms of the parties' Plea Agreement.

that a three-level downward adjustment for acceptance of responsibility *should* apply.

On April 24, 2024, the day of the scheduled sentencing hearing, the Government submitted to the Court and Mr. Taake a victim impact statement from Officer N.T. of the Metropolitan Police Department. Later that day, Mr. Taake appeared for sentencing. Mr. Taake understood that the only advisory guidelines provision in dispute was whether he was entitled to a downward adjustment for acceptance of responsibility. Mr. Taake and the undersigned counsel were prepared to address that matter, which had been briefed, at the sentencing hearing.

At the April 24, 2024 hearing, the Court first confirmed with the parties that it had received and reviewed all written materials submitted in connection with Mr. Taake's sentencing. *See* Ex. A (April 24, 2024 Tr.) at 2-3. The Court then "accept[ed] the factual findings contained in the presentence investigation report regarding the circumstances of the offense" and "adopt[ed] those facts for the purposes of imposing a sentence." *Id.* at 5-6. The Court noted that the parties disagreed as to whether Mr. Taake should receive a downward adjustment for acceptance of responsibility and commented that "the parties have teed that up." *Id.* at 6.

The Court next raised an issue that had not been presented in the Plea Agreement, PSR, or the parties' sentencing memoranda: "The other question I don't

understand is why the government and Probation aren't advocating for a three-level increase for bodily injury under 2A2.2(b)(3)(A). We have a victim impact statement that seems to get you there." *Id.* at 7. In breach of the Plea Agreement, the Government responded: "Your Honor, I would be happy for you to add the plus-three now." *Id.* at 7. The Court then turned to the probation officer, who responded that she "did not have the information for the presentence report. It was not in the Statement of Offense. It was not in the Criminal Complaint. So that is the reason I did not include the three points." *Id*. at 8.

Mr. Taake objected to the Court's consideration of the additional, unanticipated enhancement. The objection was premised both on the total lack of notice that the issue would be raised and on the grounds that if the Government were to advocate for the enhancement, it would be in breach of the Plea Agreement. Mr. Taake also submitted that the evidence before the Court did not support the enhancement. Furthermore, Mr. Taake objected to any continuance of the sentencing hearing, noting that he had already been incarcerated for 33 months and was prepared to proceed with sentencing. The Court continued its discussion with the Government: "But do you believe the record before me presently establishes beyond a preponderance that Mr. Taake sprayed the pepper spray – I'm sorry, the bear spray, in Officer [N.T.'s] face?" *Id*. at 24. The Court asked the Government "to draw the

4

legal conclusion about the preponderance." *Id*. The Government responded: "Yes, I do believe that *we've met that standard*." *Id*. (emphasis added).

The Court ultimately ruled that it would continue the sentencing hearing. The Court explained: "So we're going to continue the sentencing hearing. I'm just going to say, again, based on the government's brief and the victim impact statement, **it's like clear as day to me that the enhancement applies**. And the enhancement matters a lot here, and it would make the offense level here higher than anything that's in any other paper." *Id*. at 35 (emphasis added). The Court set a schedule for supplemental briefing and set a new sentencing date of May 23. Shortly thereafter, Mr. Taake ordered a transcript of the April 24 hearing. Sentencing was continued to June 5, 2024 to allow for Mr. Taake to obtain and review the transcript.

## II. The Application of the § 2A2.2(b)(3)(A) Enhancement Would Violate Mr. Taake's Rights of Due Process and Fundamental Fairness

The application of the bodily injury enhancement would violate Mr. Taake's rights to due process and fundamental fairness. "The requirements of due process are not suspended with the pronouncement of guilt, but continue to operate in the sentencing process." *United States v. Lemon*, 723 F.2d 922, 933 (D.C. Cir. 1983). To that end, the Federal Rules of Criminal Procedure require "focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence." *Burns v. United States*, 501 U.S. 129, 134 (1991). "[T]he

government bears the burden of proof in seeking sentencing enhancements under the Guidelines[.]" *United States v. Keleta*, 552 F.3d 861, 866 (D.C. Cir. 2009). "Whenever the Government uses uncharged conduct to seek substantial sentencing enhancements after a defendant has pled guilty, there is a significant risk to fundamental fairness and, ultimately, to a defendant's constitutional rights." *United States v. Calloway*, No. CR 17-089 (RJL), 2021 WL 3188399, at *3 (D.D.C. July 28, 2021) (Leon, J.), *aff'd,* 94 F.4th 130 (D.C. Cir. 2024). "Due process requires that a defendant be given an opportunity to assure the accurate presentation of reliable sentencing information to the district court." *United States v. Romano*, 825 F.2d 725, 728 (2d Cir. 1987)

"While evidentiary rules at sentencing may be relaxed, sentencing is still an adversarial proceeding[.] Defendants do not give up their Fifth Amendment rights at sentencing. Given the extent to which sentencing determines a defendant's liberty, it is just as crucial that the defendant have a *fair opportunity* to marshal a defense at the sentencing phase as at any other phase of the criminal proceedings." *United States v. Abreu*, 202 F.3d 386, 391 (1st Cir. 2000) (internal citations omitted) (emphasis added). In light of the Court's statements at the April 24 hearing, it is clear that the Court has already determined that the bodily injury enhancement should apply without having first heard from Mr. Taake and in the absence of any

6

adversarial proceeding with respect to the issue. In order to safeguard Mr. Taake's fundamental rights, the Court should not apply the enhancement at sentencing.

District courts must of course "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018) (citing *Gall v. United States*, 552 U.S. 38, 49, (2007)). However, a district court's factual findings and legal conclusions at sentencing must comport with the constitutional requirements of due process and fundamental fairness, and they are circumscribed by the adversarial nature of the proceeding. In this case, the Court accepted the factual findings contained in the PSR regarding the circumstances of the offense and adopted those findings for the purposes of sentencing. Ex. A at 5-6. The findings in the PSR mirror the Statement of Offense to which the parties agreed. The PSR contains *absolutely no finding* that Mr. Taake caused an officer "bodily injury" within the meaning of § 2A2.2(b)(3)(A). Without hearing from Mr. Taake, the Court then expressed its view that a victim impact statement submitted the same day as the previously scheduled sentencing hearing and not offered under penalty of perjury "seem[ed]" to establish the applicability of that enhancement, for which no party had advocated. *Id*. at 7.

Notwithstanding the terms of the Plea Agreement, which bound the parties not to "seek any offense-level calculation different from the Estimated Offense Level calculated above" (ECF No. 67 at 4), the Government, in an about-face,

advocated for the enhancement, announcing that it "would be happy for [the Court] to add the plus-three now." Ex. A at 7. In continuing the sentencing hearing, the Court concluded that "based on the government's brief and the victim impact statement, it's like *clear as day* to me that the enhancement applies." Ex. A at 35 (emphasis added). This finding violates the constitutional guarantee of due process. Mr. Taake had no notice that the matter of the application of a bodily injury enhancement would be raised at sentencing. The Government was expressly forbidden under the Plea Agreement from advocating for such an enhancement. The Court considered the Government's legal argument in its Sentencing Memorandum and an unsworn victim impact statement in reaching its conclusion. However, neither the Government's brief nor the victim impact statement was presented to the Court in the context of a request for the application of the enhancement. Indeed, in its Sentencing Memorandum, the Government argued that Officer N.T. "did not suffer bodily injury because of Taake's assault." (ECF No. 74 at 44.) The Court went outside of the adversarial process to conclude, without affording Mr. Taake notice or a fair opportunity to be heard, that the Government had proven a sentencing enhancement for which it had not advocated.

But there is more. After deciding that the enhancement should apply, the Court continued the hearing to allow Mr. Taake to come forward with evidence and argument to disprove the applicability of enhancement. This procedure too violates

8

Mr. Taake's due process rights. The Government bears the burden of proving a sentencing enhancement. Here, the Government *did not* seek a bodily injury enhancement either in its sentencing memorandum or in its objections to the PSR. The parties did not brief the issue. The PSR did not address the enhancement. The Court nonetheless concluded that the enhancement applied and placed the burden on Mr. Taake to come forward with evidence to the contrary. After making a determination outside of the bounds of the adversarial process and without having afforded Mr. Taake fair notice, the Court further compounded the error by placing the onus on Mr. Taake to show why an enhancement *neither party was seeking* should *not* apply. To enhance Mr. Taake's advisory guidelines range on the basis of a factor not presented in the parties' briefing and with respect to which the Court made an initial determination without affording Mr. Taake fair notice and an opportunity to be heard would violate the fundamental right of due process.

### III. The Government Has Breached the Plea Agreement and Should Not Be Permitted to Offer Evidence or Argument in Support of the Bodily Injury Enhancement

Under the terms of the Plea Agreement, the Government is forbidden from seeking any offense level calculation different from that to which the parties stipulated. The Government has violated that provision. As noted above, the Government told the Court that it would be "happy" for the Court to apply the bodily injury enhancement. Ex. A at 7. The Government also represented to the Court that

"*we've* met [the preponderance] standard here" with respect to the subject enhancement. *Id.* at 24 (emphasis added). The Government further told the Court that the only conclusion to be drawn is that the Court is obligated to apply the enhancement. *Id.* at 25. The Government did not merely take the position that the record before the Court established the factual and legal predicates for the enhancement.[2] The Government went further: it affirmatively advocated for an enhancement in direct violation of the Plea Agreement.[3]

It is axiomatic "that the government must keep the plea agreements it makes. Any breach of a promise that induced the guilty plea ordinarily entitles the defendant on direct review either to specific performance and resentencing before a different judge or to withdrawal of the guilty plea, as the court deems appropriate." *United States v. Pollard*, 959 F.2d 1011, 1028 (D.C. Cir. 1992). "A plea agreement is a contract and so [a court] advert[s] to principles of contract law in interpreting it." *United States v. Hunt*, 843 F.3d 1022, 1027 (D.C. Cir. 2016). In advocating for the enhancement, the Government has already breached the Plea Agreement. The Court should not countenance any further breaches of the Plea Agreement by allowing the

---

[2] As noted below, the record *does not* establish the applicability of the enhancement. In fact, in its Sentencing Memorandum, the Government told the Court that "Officer N.T. did not suffer bodily injury because of Taake's assault." (ECF No. 74 at 44.)
[3] The Government's argument contradicts its representation in its Sentencing Memorandum that Mr. Taake did not cause Officer N.T. bodily injury.

Government to submit any additional evidence or argument in support of the enhancement.

### IV. The Record Before the Court Does Not Support the Application of the Bodily Injury Enhancement

U.S.S.G. § 2A2.2(b)(3)(A) provides for a three-level enhancement in offense level where a victim sustains bodily injury. Application Note 1 to § 2A2.2 directs that the term "bodily injury" has the meaning given to the term in §1B1.1. Under Application Note 1(B) to § 1B1.1, "bodily injury" means "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." The stipulations in the Plea Agreement do not include this enhancement. There is no information in the agreed upon Statement of Offense to support this enhancement. The Probation Officer represented that she had no information to support this enhancement. In its Sentencing Memorandum, the Government told the Court that "[t]he victim in this case, Officer N.T., *did not suffer bodily injury because of Taake's assault*." (ECF No. 74 at 44.) In his unsworn victim impact statement, after discussing having been assaulted by another rioter, Officer N.T. explained that he was sprayed with bear spray. He did not identify Mr. Taake as the person who sprayed him. Towards the end of the victim impact statement, Officer N.T. noted that he "only recently learned that it was the defendant

11

who sprayed [him] with the bear spray." There is no evidence about the circumstances under which Officer N.T. allegedly learned about this information.

This record does not support a bodily injury enhancement. No party has sought the enhancement. It its Sentencing Memorandum, the Government explicitly stated that Officer N.T. did not suffer bodily injury because of Mr. Taake. The Government's most recent argument to the contrary is not credible and is not based on any reliable source of fact. The notion that the Government would have had no idea about Officer N.T.'s purported injuries at the time it submitted its Sentencing Memorandum on March 21, 2024 defies belief. The Government has been investigating Mr. Taake for *years*. The Government has combed through Mr. Taake's public statements after he was charged but before the entry of his guilty plea. (ECF No. 74 at 27-29.) The Government has painstakingly reviewed records related to Mr. Taake's detention at various prisons and jails during the pendency of this case. (ECF No. 74 at 35.) The Government has viewed countless hours of footage of the events of January 6. Indeed, a significant portion of the Government's Sentencing Memorandum consists of screenshots from various videos depicting those events. The Government would have this Court accept that in spite of a clear record of its active investigation into all aspects of Mr. Taake's case, it was not able to learn about Officer N.T.'s purported bodily injury until the day of sentencing.

Officer N.T. is a member of law enforcement. The Government had full access to him throughout this case. The Government drafted the Plea Agreement. The Government drafted the Statement of Offense. The Government had every opportunity to insist that any guilty plea include a factual basis for a bodily injury enhancement. It did not. To the contrary, nearly three years after Mr. Taake was first charged in this case, the Government represented to this Court in its Sentencing Memorandum that Mr. Taake *did not* cause Officer N.T. bodily injury. There is simply no reliable evidence to support this enhancement. Accordingly, to the extent the Court overrules Mr. Taake's due process arguments, the Court should not apply the enhancement.

## CONCLUSION

Mr. Taake has been placed in a nearly impossible situation – one at odds with the constitutional guarantees of due process and fundamental fairness. The Government waived any right to argue for the application of a bodily injury enhancement. The Plea Agreement, Statement of Offense, and PSR contain no evidence to support the enhancement. Nonetheless, on the basis of both a Sentencing Memorandum in which the Government explicitly stated that the victim did not suffer bodily injury as a result of Mr. Taake's actions and the victim's unsworn impact statement, the Court concluded, without affording Mr. Taake fair notice or a meaningful opportunity to be heard, that it was clear as day that the enhancement

applied. The Government cynically took advantage of the Court's views by breaching the Plea Agreement and advocating for the enhancement, in a direct repudiation of its representation in its Sentencing Memorandum. And the Court then shifted the burden to Mr. Taake to disprove the applicability of an enhancement the Government cannot lawfully seek and which it has already disclaimed in a filing before this Court.

As of June 5, Mr. Taake will have been incarcerated for more than 34 months. More than four months ago, he formally accepted responsibility for his actions on January 6, 2021. Mr. Taake negotiated the Plea Agreement in good faith. For the reasons stated above, the application of a bodily injury enhancement would violate fundamental right of due process. There is no support for the enhancement. The Court should decline to apply it.

Respectfully submitted,

_____/s/_____
Michael E. Lawlor
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of May, 2024, the foregoing was served on all parties via ECF.

_____/s/_____
Michael E. Lawlor