# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


UNITED STATES OF AMERICA,

           Plaintiff,

     vs.

ANDREW TAAKE,

          Defendant.
_____/

Criminal Action
No. 1:21-498

Washington, DC
April 24, 2024

2:09 p.m.


TRANSCRIPT OF SENTENCING
**BEFORE THE HONORABLE CARL J. NICHOLS**
UNITED STATES DISTRICT JUDGE


APPEARANCES:

**For the Plaintiff:**     **Madison Mumma**
                           USAO-DOJ-OSC
                           1301 New York Avenue NW, Ste 1000
                           Washington, DC 20530
                           Email: madison.mumma@usdoj.gov

**For the Defendant:**     **Michael E. Lawlor**
                          **Nicholas Madiou**
                           BRENNAN MCKENNA & LAWLOR
                           6305 Ivy Lane, Suite 700
                           Greenbelt, MD 20770
                           Email: mlawlor@verizon.net

**Reported By:**         **LORRAINE T. HERMAN, RPR, CRC**
                           Official Court Reporter
                           U.S. District & Bankruptcy Courts
                           333 Constitution Avenue NW
                           Washington, DC 20001


**\*\*\*** Proceedings recorded by stenotype shorthand.
**\*\*\*** Transcript produced by computer-aided transcription.

1          **P R O C E E D I N G S**

2              **DEPUTY CLERK:**  Good afternoon, Your Honor.  This

3     is criminal case year 2021-498, *United States of America*

4     *versus Andrew Quentin Taake.*

5              Probation officer is Crystal Lustig.

6              Counsel, please come forward to introduce

7     yourselves for the record, beginning with the government.

8              **MS. MUMMA:**  Good afternoon, Your Honor.

9     Madison Mumma for the United States.

10             **THE COURT:**  Ms. Mumma.

11             **MR. LAWLOR:**  Good afternoon, Your Honor.

12    Michael Lawlor and Nicholas Madiou for Mr. Taake.

13             **THE COURT:**  Mr. Lawlor and Mr. Madiou, welcome

14    back.

15             **MR. MADIOU:**  Good to see you, Your Honor.

16             **THE COURT:**  Good to see you too.

17             Mr. Taake.

18             We are here to sentence the defendant, Mr. Taake,

19    on one count of assaulting, resisting or impeding officers

20    in violation of 18 U.S. Code, Sections 111(a)(1) and (b).

21    Are the parties ready to proceed?

22             **MS. MUMMA:**  Yes, Your Honor.

23             **MR. LAWLOR:**  Yes, Your Honor.

24             **THE COURT:**  So just to preview a couple things, I

25    think all counsel have seen this to some extent.

1              Just to state for the record what I've done to

2      prepare and what I am relying on here, in addition to the

3      materials submitted in connection with the plea, I've

4      reviewed Probation's presentence investigation report and

5      recommendation, the government's sentencing brief,

6      defendant's sentencing brief and supplement, including the

7      letters of support from family and other community members.

8              I've reviewed the victim impact statement, which

9      was just submitted, and I have watched all of the videos

10     that were included as exhibits with the government's brief.

11     Again, I've reviewed all of the videos submitted with the

12     government's brief.

13             Before we begin, does anyone have any written

14     materials that it would like to draw my attention to that I

15     haven't mentioned?

16             Ms. Mumma?

17             **MS. MUMMA:**  No, Your Honor.

18             **THE COURT:**  Mr. Lawlor?

19             **MR. LAWLOR:**  No, Your Honor.

20             **THE COURT:**  So, again, as I typically do, we're

21     going to take this in four steps.  I'll first consider any

22     objections to the PSR, in particular, the factual

23     circumstances of the offense, and make my factual findings

24     with respect to it.

25             I'll then calculate the appropriate range under

1    the guidelines.  I'll then hear from counsel and Mr. Taake

2    or anyone else who might wish to speak at that point.  And

3    then I will pronounce the sentence.

4            Turning to the PSR, it appears that neither party

5    has any outstanding objections to the circumstances of the

6    offense described therein.  Is that correct from the

7    government's perspective?

8            **MS. MUMMA:**  That's correct.  I just wanted to note

9    one typo that I noticed in Paragraph 91.  I believe it says

10   that his sentencing guideline range, at least calculated by

11   the U.S. Probation office, is 63 to 78 months -- it should

12   be 63 to 78 months rather than 77 months, as it currently

13   says.

14           **THE COURT:**  That seems correct to me.

15           The PSR, I believe -- that should be 78.  Correct?

16   Everybody agrees that should be 78, based on an offense

17   level of 26 and Criminal History Category I.  We're talking

18   about Paragraph 91?

19           **MR. LAWLOR:**  We don't agree that that's the

20   correct range, but we agree that's how it should read.

21           **THE COURT:**  You agree that's how it should read if

22   the total offense level is 26 --

23           **MR. LAWLOR:**  Correct.

24           **THE COURT:**  -- and at the Criminal History -- yes,

25   agreed.  So we'll treat Paragraph 91 as reading 63 months to

1   78 months, rather than 77 months.

2          Mr. Lawlor, obviously, as you just said, Mr. Taake

3   disagrees with the guidelines calculation reflected in the

4   PSR and the government's brief.  But just in terms of the

5   factual statements in the PSR, the circumstances of the

6   offense, does Mr. Taake have any objections to it?

7          **MR. LAWLOR:**  No.

8          **THE COURT:**  Mr. Taake, if you could just pull the

9   microphone toward you, just a couple questions.

10          Have you had a chance to review this document, the

11   presentence investigation report?

12          **THE DEFENDANT:**  Yes, sir.

13          **THE COURT:**  Have you had a chance to talk to

14   Mr. Lawlor about it?

15          **THE DEFENDANT:**  Yes, sir.

16          **THE COURT:**  Did you have enough time to talk about

17   that report and the briefs that have been filed in this

18   matter?

19          **THE DEFENDANT:**  Yes, sir.

20          **THE COURT:**  Are you satisfied with Mr. Lawlor's

21   services?

22          **THE DEFENDANT:**  Yes, sir.

23          **THE COURT:**  Okay.  Thank you.

24          Pursuant to Rule 32, I accept the factual findings

25   contained in the presentence investigation report regarding

1    the circumstances of the offense, and I adopt those facts

2    for the purposes of imposing a sentence.

3            Step two is the guidelines question.

4            I have two issues I'd like to discuss.  The first,

5    of course, is the parties' and Probation's disagreement on

6    whether Mr. Taake should receive a three-level reduction for

7    acceptance of responsibility.  Obviously, the parties have

8    teed that up.

9            And, Mr. Lawlor, it may be that we take this

10   somewhat in the order that we took, I believe, the Portlock

11   sentencing, in the sense that -- it's up to you, of course,

12   but you may want to have, if he's going to say something,

13   Mr. Taake allocute, if he's going to do so later, before I

14   do my guidelines calculation.

15           **MR. LAWLOR:**  I'm sorry, Your Honor.  I'll defer to

16   the Court.

17           If the Court wants Mr. Taake to allocute before

18   you make the guidelines determination, that's fine.  Or if

19   you want to go in the normal order but announce the

20   guideline calculation right before you announce the sentence

21   and that way Mr. Taake gets the last word --

22           **THE COURT:**  He can do both.  I guess you're not

23   advocating for Mr. Taake to allocute before I do my

24   guidelines calculation.

25           **MR. LAWLOR:**  Well, I just want him to get the last

1    word.  That's all.

2            **THE COURT:**  He can have both words if he would

3    like.

4            **MR. LAWLOR:**  Okay.

5            **THE COURT:**  So there's that question.

6            The other question I don't understand is why the

7    government and Probation aren't advocating for a three-level

8    increase for bodily injury under 2A2.2(b)(3)(A).  We have a

9    victim impact statement that seems to get you there.

10           Ms. Mumma?

11           **MS. MUMMA:**  Your Honor, I would be happy for you

12   to add the plus-three now.  But when we were first reviewing

13   this case and we were first discussing plea agreement

14   options, that had not been established at that point.

15           I know this case has been pending for a long time,

16   but it was difficult to get in contact with the officers and

17   understand the extent of their injuries prior to the plea

18   agreement being entered into.  So we did not add the

19   plus-three at that time.

20           **THE COURT:**  Ms. Lustig?

21           **PROBATION:**  Good afternoon, Your Honor.

22           **THE COURT:**  Good afternoon.

23           What do you think about whether a three-level

24   increase under 2A2.2(b)(3)(A) is warranted here, in light of

25   the facts in the PSR and the victim impact statement we have

1      here?

2              **PROBATION:**  Your Honor, I did not have the

3      information for the presentence report.  It was not in the

4      Statement of Offense.  It was not in the Criminal Complaint.

5      So that is the reason that I did not include the three

6      points.

7              If you determine that there was serious bodily

8      injury, then you can certainly add the three points to the

9      calculation.  But I did not have that information.

10             **THE COURT:**  Okay.  Have you seen the victim impact

11     statement?

12             **PROBATION:**  I have not.

13             **THE COURT:**  I know I would be asking you this a

14     little bit on the fly and I recognize that.  So don't feel

15     that you are being asked to articulate anything without due

16     consideration if you'd like to think about it.

17             This is what it says.  It says.

18             "Then I was sprayed with bear spray.  I was

19     immediately blinded.  It was the most pain I've ever

20     experienced.  It was like living death.  It took my breath

21     away.  It left me entirely vulnerable.

22             "I didn't know where I was.  I was reaching around

23     for help from anyone.  I made contact with people, but I

24     didn't know if it was a rioter leading me back into the mob

25     or a fellow officer.  I eventually made my way back to the

1    scaffolding.  I hit my head on the scaffolding twice."  And

2    then it goes on.

3            Assuming that that's true and part of the record

4    here, would that qualify as bodily injury sufficient for a

5    three-level increase under 2A2.2(b)(3)(A)?

6            **PROBATION:**  It would if you establish that it was

7    his injury and what he experienced was the result of the

8    spray from this defendant.

9            **THE COURT:**  Okay.  Fair enough.  Thank you.

10           **PROBATION:**  Okay.

11           **THE COURT:**  Mr. Lawlor, why don't we -- I'd like

12   your view on that question of course.  And then I'll also

13   want to hear from you on acceptance of responsibility.

14           **MR. LAWLOR:**  So, Your Honor, in terms of that, the

15   prospects of three levels being added for bodily injury, I

16   will say, Your Honor, that the government has had the facts

17   and has had availability to the witnesses for three years

18   and three months and some days.

19           It's not in the Statement of Facts.  I don't think

20   that that statement, even if it is part of the record for

21   purposes of determining the guidelines, is proof that

22   Mr. -- the officer, rather, was sprayed by Mr. Taake; and

23   that's how he received that injury.

24           But also, Your Honor, this plea agreement was long

25   in coming.  There were a lot of different permutations that

1   went back and forth.  Your Honor might recall that Mr. Taake

2   had his presentence report done about a year before the plea

3   out of -- partially out of frustration that, you know, we

4   couldn't get to an agreement.  And that was, obviously,

5   partially, because of Your Honor's ruling and the

6   government's appeal on the 1512 issue.

7           But it would be unfair, to put it mildly, to now,

8   on the day of sentencing, after negotiations, after an

9   agreed-upon Statement of Facts, after an agreed-upon

10  guidelines computation, except for this acceptance issue,

11  for this 11th hour and 59th minute for three levels to be

12  added.

13          And I'll say, Your Honor, that obviously, it's the

14  government that bears the burden of proof.  For them to try

15  to prove this right now would be a breach of the agreement.

16  So I don't think they can now, even at the Court's

17  invitation, try to prove it.

18          And I don't think, number one, that those facts

19  support a three-level increase nor, obviously, would it be

20  appropriate, I think, given the long history of negotiations

21  and where we are, you know, up to walking in this courtroom,

22  what we all believe the guidelines to be.

23          So I don't think, Your Honor, factually, legally

24  or just from a fairness point of view, that it would be

25  appropriate to have that three-level --

1        **THE COURT:**  Let's take each of those pieces.  The

2    first, I think, is that the government -- I mean it's all

3    related, but your view is the government bears the burden of

4    proving by a preponderance that the increase applies.  The

5    government, if it tried to prove it, would be in breach of

6    the plea agreement.

7        **MR. LAWLOR:**  Correct.

8        **THE COURT:**  The government made a series of

9    statements that have factual support, maybe, to me.  But if

10   we're just talking about the facts that are before me on the

11   record, I take it your argument is, even though the

12   defendant admitted to spraying bear spray and even if we

13   have a victim impact statement saying, I was sprayed with

14   bear spray and here's what happened as a result, I

15   experienced extreme pain, we do not have proof in the record

16   before me that that bear spray that hit the officer was

17   sprayed by Mr. Taake.

18       **MR. LAWLOR:**  Correct.  And I think the Court could

19   take judicial notice, based on the sort of collection of

20   sentences that have been handed down that the government has

21   made available to the Court, the defense, barring the public

22   at large, and their memo when they indicate that Mr. Taake

23   is not the only defendant to have been convicted for the use

24   of bear spray.

25       **THE COURT:**  Right.  Right.

1          The question is whether the victim impact

2   statement, perhaps even what the victim might say today, is

3   enough to link Mr. Taake to the victim.  That's a

4   factual/proof question.

5          Let's assume hypothetically that was true, in

6   other words, that a preponderance established that.  I'm not

7   saying it is.  I'm just saying assume it.  Don't I have an

8   obligation to correctly apply the guidelines?

9          And what difference does it make to me in doing

10  that whether there is a plea agreement here and whether the

11  parties negotiated an estimated outcome that is, by

12  definition, estimated and, by definition as we always say at

13  the plea, subject to my finally and correctly deciding the

14  guidelines?

15          **MR. LAWLOR:**  Yes.  Except, even in that

16  circumstance, Your Honor, if you intended to apply a

17  guideline factor that the parties did not anticipate, you

18  would owe the defendant notice of that fact.

19          And, you know, as I said, walking into this

20  courtroom, Mr. Taake did not have notice and, therefore, you

21  know, but-for me sort of just off-the-cuff arguing that the

22  Court shouldn't apply it, he has not had an opportunity to,

23  you know, assess the evidence.

24          **THE COURT:**  What source do you -- are you citing

25  for the proposition that I have to provide you some notice,

1    other than there is a set of facts in the record right now

2    and I have to correctly decide the guidelines and those

3    facts, by the way, include the government's brief and all

4    the evidence supporting it?

5            **MR. LAWLOR:**  Well, Your Honor, I'll just say I

6    have never had a circumstance where the Court has

7    anticipated, potentially, applying an increase to the

8    guideline range and not given the defendant notice.

9            Again, because I didn't have notice, I haven't

10   researched that question.  I am willing to bet that there is

11   a section in the guidelines that supports the proposition

12   that I have just laid at the Court's feet that the defendant

13   is entitled to notice but --

14           **THE COURT:**  Right.  So at a minimum, from your

15   perspective, I shouldn't make the guidelines calculation

16   today.  I should say, this is something that -- I mean, be

17   very clear, you read the government's brief.  You look at

18   the videos.

19           You certainly read the victim impact statement.

20   Anyone looking at 2A2.2 would say, Whoa, what about the

21   bodily injury enhancement?  This is not buried which is what

22   I did.

23           **MR. LAWLOR:**  Except, Your Honor, I received the

24   victim impact statement today.

25           **THE COURT:**  I get that and I agree with that, as

did I.  But the linking of the pepper spray by Mr. Taake to

spray in an officer's face and the resultant pain is in the

government's brief so it's not news to anyone.

And then, if you have bear spray, extreme pain to

officer, open up the guidelines, you work through 2A2.2,

it's staring you right in the face.  Not to say that you had

notice from me that that was possible, but I have an

independent obligation to get the guidelines right.  But you

also have a plea agreement.

What do you propose I do today if I didn't think

it was as simple as saying, based on the plea agreement or

otherwise, no enhancement?

**MR. LAWLOR:**  Well, Your Honor, like I said, it's

not that simple from our perspective either because, as I

said, this was a -- in all of the cases I have had handling

defendants' charges, as a result of conduct from January

6th, and possibly even in my career, this is one of the

longest -- I don't want to say difficult, because the

government wasn't being difficult.

**THE COURT:**  I understand.

**MR. LAWLOR:**  But difficult in terms of just the

length of time and the back-and-forth it took to reach an

agreement.  There were other offers that were made.

Candidly, I don't have those, again, at my disposal right

now, that may not have included a 111 count, for example, in

1    which case the prospect of this three-level enhancement may

2    not have been in the offering whatsoever.

3              So I do think it's not just a matter of fairness

4    to Mr. Taake to get, you know, a guideline range imposed by

5    the Court that he anticipated, not just for the past

6    X-number of months since he pled guilty, but this goes

7    back -- the 26, that number, goes back years.

8              In fact, it was lower than that originally.  There

9    was a plea offer lower than 26 that had been offered to

10   Mr. Taake at a different point in time.  So it's not just a

11   matter of fairness in terms of his expectation, in terms of

12   walking through the courthouse doors today as to what

13   guideline range the Court would find, again, absent the one

14   issue dealing with acceptance.

15             But Mr. Taake might have or counsel might have

16   advised him to seek or obtain a different offer altogether.

17   And I'm not sure we can go back to that place in time.

18             **THE COURT:**  You agree I'm not bound by the plea

19   agreement estimate.  Right?

20             **MR. LAWLOR:**  It's a general proposition I'd agree

21   with that.

22             **THE COURT:**  You agree I have an independent

23   obligation to calculate the guidelines correctly.  In fact,

24   I have an independent obligation to decide whether the

25   three-level acceptance for responsibility agreement, such

1    that it is in the plea agreement, is applicable here.

2            **MR. LAWLOR:**  I'm sorry?

3            **THE COURT:**  I have an independent -- putting this

4    issue to the side, I have to decide, independent of what the

5    parties think about whether Mr. Taake is entitled to the

6    three-level reduction for acceptance of responsibility,

7    whatever the plea agreement says on this question.

8            **MR. LAWLOR:**  Well, yeah, of course.  I agree with

9    that, yes.

10           **THE COURT:**  I therefore, in my view, also have an

11   independent obligation to decide whether the rest of the

12   guidelines analysis, as articulated in the PSR and as

13   estimated in the plea agreement, is correct.  Right?

14           **MR. LAWLOR:**  Again, as a general proposition, yes,

15   but not without guardrails.

16           **THE COURT:**  Right.  And I'm trying to explore what

17   the guardrails are here.  I completely understand, and I

18   don't mean to suggest otherwise, that you could not have

19   known until you walked in today that I was at least

20   questioning whether this enhancement applies.  I understand

21   that.

22           I'm trying to understand, from your perspective,

23   whether the way to deal with it is to provide you notice

24   that it's on my mind, to indicate that the record seems to

25   suggest that it might be applicable, and take a pause and

1    see what -- I don't mean a pause like for a half an hour.

2            I mean to say, Is Mr. Taake still willing to

3    proceed with the possibility that that enhancement is going

4    to apply or is your view that those guardrails foreclose me

5    from applying the enhancement?

6            **MR. LAWLOR:**  Yeah, that is my position.

7            **THE COURT:**  I am asking why that would be the case

8    here.

9            **MR. LAWLOR:**  Well, for two reasons.  You know, and

10   I don't mean to be disrespectful to the Court, but you've

11   had the PSR.  You didn't get it yesterday.

12           **THE COURT:**  That's a notice question.

13           **MR. LAWLOR:**  Again, but that's my point.  We

14   were --

15           **THE COURT:**  I know, but I can cure the notice

16   question by saying, Let's come back in a month.

17           **MR. LAWLOR:**  Well, but that's my point.  That's

18   not --

19           **THE COURT:**  That assumes that there's anything

20   that can be done in the next month.

21           **MR. LAWLOR:**  It can't be and that's one of my

22   points.

23           Number one, as I said, I don't think it's fair to

24   Mr. Taake to just say, All right, well, you've been in jail

25   pretrial, not in a Bureau of Prisons facility, you know,

1    without healthcare and without programming for now

2    33 months.  Let's come back even later, number one.

3            But, number two, more importantly, as I said,

4    there were a number of plea offers extended to Mr. Taake.

5    He chose this one.

6            **THE COURT:**  Do you think the government breached

7    the plea agreement by putting in front of me facts that

8    would lead any reasonable jurist to say, Ah-ha, this

9    enhancement might apply?

10           **MR. LAWLOR:**  No.  Because I mean there's an

11   obvious bait-and-switch, which I would call out.  But they

12   can ask for, even within the guideline range, what they

13   perceive to be a reasonable sentence, even within the range

14   that we originally anticipated.

15           So they can point out facts that they believe to

16   be true.  And I'm not saying that they have put forth facts

17   that they don't believe to be true.

18           **THE COURT:**  But just to be very clear, if, for

19   example, the officer, whose victim impact statement we have,

20   came in here this morning and said, Here's the video, here's

21   me, here's Mr. Taake.  This is the event.  This is where I

22   saw it.  I was pepper sprayed by Mr. Taake, and everything I

23   said in the victim impact statement was because of that

24   spray.

25           I'm not saying that's true.  Imagine that happened

1    right now.  Your view is I would be foreclosed from applying

2    that enhancement?

3         **MR. LAWLOR:**  Yes.  Because I have -- even if he

4    says it, with all due respect to him, again, there are

5    thousands of hours of videos.  And I would certainly --

6         **THE COURT:**  I'm setting up the hypothetical where

7    the evidence is --

8         **MR. LAWLOR:**  No, but I would look at those videos.

9    I wouldn't just take it at face value that what the officer

10   is saying is true.

11        **THE COURT:**  You're fighting my hypo.  Let me make

12   they hypo even clearer.  Let's assume I make crystal clear

13   that I conclude beyond a reasonable doubt, not even a

14   preponderance, that Mr. Taake sprayed bear spray in this

15   officer's eyes and caused the injury as described to this

16   officer.  I'm not saying that's the case.  I'm just saying,

17   let's assume it for purposes of my question.

18        **MR. LAWLOR:**  Yes.

19        **THE COURT:**  Is your view that, in those

20   circumstances, I still would be foreclosed from applying the

21   enhancement?

22        **MR. LAWLOR:**  Yes.

23        **THE COURT:**  Why?

24        **MR. LAWLOR:**  For the reasons I stated.

25        **THE COURT:**  Because there's guardrails and notice?

1          **MR. LAWLOR:**  Your Honor, I don't think that's an

2     insignificant thing that Mr. Taake's owed notice when his

3     liberty is at stake.  And to have an appreciation for, you

4     know, what additional portion of his life might be spent

5     behind bars and expect his lawyers to do their due

6     diligence, it's a fight against additional parts of his life

7     being deprived of him, number one.  And, number two, as I

8     said, this was a very carefully crafted plea agreement.

9          **THE COURT:**  Right.  That's why I thought you might

10     say that the government breached it because the deal was the

11     facts are the facts.  And the government has come in and

12     provided me with a bunch more facts.

13          **MR. LAWLOR:**  Well, being candid, I don't think I

14     can lay at the government's feet that they breached the

15     agreement.  I don't think that's a fair -- I mean, I

16     certainly have criticisms of their brief; that's not one of

17     them.

18          **THE COURT:**  Right.  On other topics, yeah.

19          **MR. LAWLOR:**  Yeah.

20          **THE COURT:**  Okay.  I think I understand.

21          I just want to go back to the government on these

22     questions before we talk about anything else.

23          Ms. Mumma.

24          **MS. MUMMA:**  Yes, Your Honor.  Just briefly because

25     I agree with everything that you're saying.  I don't think

1    there is any -- there is really no legal basis that you must

2    provide notice of any kind of additional sentencing

3    enhancements that you are going to apply.

4          And then I would just point both the defendant and

5    Your Honor to the language of the plea agreement that

6    explicitly states that the Court is not bound by this

7    agreement and gives plenty of notice that this could be

8    happening today.

9          And, again, I submitted my -- the government

10   submitted their brief over a month ago, and in that brief it

11   is discussed -- Officer Tate's injury, specifically, is

12   discussed and photos are provided and I also provided those

13   exhibits a month ago.

14         So I think plenty of notice has been given here.

15   Your Honor is not bound by this plea agreement though the

16   government is.  So the government itself is not advocating

17   for this additional plus-three at this time.  But Your Honor

18   has an independent obligation, as you have stated, to assess

19   the facts and apply the relevant enhancements.

20         **THE COURT:**  Obviously, there are two things being

21   talked about here.  There is the question of whether the

22   enhancement has or could be demonstrated by a preponderance.

23   And then there is the question of what, if any, notice in

24   advance should the defendant have had?

25         It seems to me that the notice question is curable

1    if there is any problem.  I'm not even suggesting there is

2    one, for all the reasons you just articulated, but like

3    somebody's going to complain that I didn't come in before a

4    sentencing hearing and say, I might have had a slightly

5    different or a different guidelines calculation.  I can deal

6    with that.

7            **MS. MUMMA:**  I believe that happens at most

8    sentencing proceedings.

9            **THE COURT:**  It happened twice yesterday.

10           **MS. MUMMA:**  I was here for it.

11           **THE COURT:**  In this courtroom.  You were here for

12   one of them.

13           **MS. MUMMA:**  Yes.

14           **THE COURT:**  Some of them break the defendant's way

15   as yesterday did.  Sometimes they don't.

16           But to the extent that notice of this is required,

17   again, to the extent, I can provide notice.

18           **MS. MUMMA:**  Sure.  Government does not object to

19   postponing this hearing.

20           **THE COURT:**  But then the question might be -- and

21   I don't really have any interest in getting in the middle of

22   it -- is whether, now that there's, I'll put it this way, a

23   different record, the possibility that I would be adding

24   this enhancement, I well understand why Mr. Taake, his team,

25   would say, Well, the ground has shifted under us quite a

1  bit.  We want to think about whether this is the deal we

2  want to live with.

3         **MS. MUMMA:**  Sure.

4         **THE COURT:**  And I'm not forcing the government to

5  say, Yes, we would be willing to have that conversation.

6  But would the government be willing to have that

7  conversation?

8         **MS. MUMMA:**  Sorry.  Can you specify --

9         **THE COURT:**  The conversation would be, We pled to

10 111(a)(1) and (b) together, on a set of stipulated facts, on

11 a set of understandings around estimates.  Obviously, they

12 are estimates.

13        But no one ever told us until today that one thing

14 that we might be at risk of was going up to either -- going

15 up three levels, which is significant at the levels we're

16 talking about.  It's a three-level enhancement, at a

17 minimum, by the way.

18        I've been talking about the bodily injury

19 enhancement, but there's an argument that even more of an

20 enhancement is warranted here, right, just depending on what

21 the facts are like.

22        But it seems quite natural to me that the

23 defendant would be saying, Well, in light of this, I might

24 want to think through a different approach to this case,

25 maybe go back to the government and ask whether it's willing

1    to reinvigorate an old plea offer or go to trial.

2            **MS. MUMMA:**  I can say for the record that the plea

3    offer is not going to change at this point.  I think

4    Your Honor would agree that it's time to go to trial if this

5    plea offer is going to fall through at this point.

6            I already had doubts that this plea offer -- that

7    we'd go forward today based on his statements after the

8    change of plea hearing.

9            **THE COURT:**  Let me ask you this question.  I am

10   posing this question to you.  And my view is that, by

11   answering it, you would not be in breach of the plea

12   agreement.  I don't know how much comfort that gives you.

13           But do you believe the record before me presently

14   establishes beyond a preponderance that Mr. Taake sprayed

15   the pepper spray -- I'm sorry, the bear spray, in

16   Officer Tate's face?

17           **MS. MUMMA:**  Yes, Your Honor.  I mean I can't --

18   the facts are the facts.  I wish they weren't these facts.

19           **THE COURT:**  No, I am asking you to draw the legal

20   conclusion about the preponderance.

21           **MS. MUMMA:**  Yes, I do believe that we've met that

22   standard.

23           **THE COURT:**  So therefore, the government's view,

24   in response to a question from me --

25           **MS. MUMMA:**  Yes.

1    **THE COURT:**  -- is that the record establishes a

2    three-level enhancement, at least, that the government isn't

3    advocating I apply?

4    **MS. MUMMA:**  Yes, Your Honor.

5    **THE COURT:**  Right.  But I have an independent

6    obligation to get it right.

7    **MS. MUMMA:**  Yes.

8    **THE COURT:**  Don't you think the only conclusion I

9    can therefore draw from that is that I am obligated to apply

10   the three-level enhancement?

11   **MS. MUMMA:**  Yes.  But whether you need a, you

12   know, evidentiary hearing to do so, I think my hands are

13   tied.  I'm not --

14   **THE COURT:**  The government's position is I don't

15   because the record establishes it.

16   **MS. MUMMA:**  Yes.  And I think, just to point out

17   something I think is pretty obvious, he has his name tag on

18   his vest --

19   **THE COURT:**  I know.

20   **MS. MUMMA:**  -- that is visible at various points.

21   It is Officer Tate in that video and it is Officer Tate that

22   was sprayed and it is Officer Tate that is here today.  So,

23   I think, yes, those facts have been established.

24   **THE COURT:**  Okay.  Mr. Lawlor, let's assume the

25   following is true, that everything I just said I agree with.

1    You obviously would contest much of it, certainly factually

2    and from a record perspective and the like.  I completely

3    understand why you would not feel that you had any notice

4    that that was going to be part of this.  That, I completely

5    understand.

6         Doesn't it make sense to, at a minimum, allow you

7    to have some time to do that?

8         **MR. LAWLOR:**  Well, that's sort of a Hobson's

9    choice, Your Honor, because, if I accept the Court's offer,

10   I've basically just waived my notice objection.  So --

11        **THE COURT:**  I think you could preserve it.

12        **MR. LAWLOR:**  I don't think I can.

13        **THE COURT:**  I mean --

14        **MR. LAWLOR:**  You know, and as I said --

15        **THE COURT:**  I think I need more from you than, I

16   think you have -- you, Judge, notwithstanding the plea,

17   having only estimates in there and the like, you have an

18   obligation to have informed me in advance of this hearing

19   that you thought the facts established an offense level that

20   we've not calculated.

21        **MR. LAWLOR:**  Your Honor, I think, to call what's

22   in both the plea agreement and the presentence report

23   estimates, doesn't do those documents due justice.  Because

24   we rely on --

25        **THE COURT:**  So you've been in a lot.  You've been

1   in a few sentencings.

2              **MR. LAWLOR:**  I've been in a lot.

3              **THE COURT:**  If you were here yesterday --

4              **MR. LAWLOR:**  No, I wasn't here yesterday.

5              **THE COURT:**  No, I said, if you had been here

6   yesterday and if you had been in almost, I would say,

7   60 percent of my January 6 sentencings where the guidelines

8   apply, I am coming out with an outcome different from that

9   advocated by at least one of the relevant parties, the

10  defendant, the government and the Probation Office.

11             **MR. LAWLOR:**  Well, Your Honor, I've been doing

12  this for 27 years and I can count on one hand the number of

13  times -- I can't count on one hand, even, the number of

14  times a judge has come in and said, I'm going to apply a

15  different guideline calculation and this is the first time

16  you're hearing about it.  This will be the one and only time

17  that's ever happened.  So that will be --

18             **THE COURT:**  At least upward.

19             **MR. LAWLOR:**  Yeah, well, yeah, of course, upward.

20  Right.  But in honesty, if you were arguing that Mr. Taake

21  should get some benefit, I would not make that argument.  If

22  you applied it, you would apply it.  I wouldn't argue it

23  'cause that would be a breach.  And so the government's

24  argument here is a breach.

25             Even if you lay it at them and say, I have my

1    fingers crossed you're not in breach, they are in breach if

2    they're arguing that you should apply this.

3            **THE COURT:**  I think they're very clear that --

4            **MR. LAWLOR:**  Like I said, you can't unring the

5    deprivation that is now going to be applied to Mr. Taake to

6    select, amongst a variety of discussions we had, not with

7    Ms. Mumma but with her predecessor -- and Mr. Madiou can

8    back me up on this because we've talked to Mr. Disney, you

9    know, Lord knows how many times.

10           **THE COURT:**  I have no doubt that the parties

11   negotiated this long and hard, that this is a negotiated

12   outcome, that other than the acceptance of responsibility

13   dispute, which, by the way, is something I also have to

14   resolve today.

15           **MR. LAWLOR:**  I know.  I'm not losing sleep over

16   that.  I'm comfortable with the fact that Mr. Taake's

17   accepted responsibility.

18           **THE COURT:**  But I mean, I could come to a

19   different view of that.

20           **MR. LAWLOR:**  Of course you can.  Like I said, I'm

21   comfortable with the state of the record on that issue.

22           **THE COURT:**  So what I was saying is I have no

23   doubt that the parties negotiated this in good faith and it

24   took forever and there was a particular reason the outcome

25   was as stated and a Statement of Offense that has very few

1   of the facts that I am talking about now.

2          But what's also true is I am now presented with a

3   sentencing record that is substantially more robust.  And I

4   have an obligation to decide at sentencing what the right

5   guidelines are, the range and the applicability.

6          **MR. LAWLOR:**  You do but you also have an

7   obligation to make sure that the defendant's due process

8   rights aren't violated.

9          **THE COURT:**  So at what time was I obligated to

10  provide him with notice?

11          **MR. LAWLOR:**  Your Honor --

12          **THE COURT:**  -- of my potential --

13          **MR. LAWLOR:**  -- I don't know how many times I can

14  say this.  It's not just an issue of the notice.  It's an

15  issue of the fact that he selected this plea --

16          **THE COURT:**  Did I bless the PSR when you pled?

17  Did I say, I agree with the guidelines calculation in the

18  PSR?  Did those words ever come out of my mouth?

19          **MR. LAWLOR:**  No.  No.  No.

20          **THE COURT:**  So what did I do that I'm somehow

21  estopped from calculating for the first time in this case

22  the correct guidelines?

23          **MR. LAWLOR:**  Because it's the first time.

24          **THE COURT:**  You had a PSR drafted.  You had a PSR

25  that was drafted.  That happened.

1        **MR. LAWLOR:**  Uh-huh.

2        **THE COURT:**  You had a view about it.  There were

3   estimates in your plea agreement and the like.

4        At what point was I obligated to tell you I think

5   the guidelines approach might be wrong?  Tell me when I

6   was --

7        **MR. LAWLOR:**  Before 2:05 today.

8        **THE COURT:**  But why can't I cure that by saying

9   the sentencing hearing is put off?

10       **MR. LAWLOR:**  I've already said why there's no cure

11   to this except inviting the government to breach its

12   obligation to Mr. Taake, which has already been done, you

13   know, but just to -- you know, the notion that Mr. Taake has

14   been, you know --

15       **THE COURT:**  If we were here two months ago having

16   this exact same conversation, and I said, Let's continue the

17   hearing until April 24th, you would say I had violated

18   Mr. Taake's due process rights that way?

19       **MR. LAWLOR:**  Well, I don't know because that's not

20   the circumstance here, you know.  So I really can't -- I

21   can't answer that.

22       **THE COURT:**  All right.

23       **MR. LAWLOR:**  Mr. Taake has been in jail for

24   33 months.  He came here today with an expectation that he'd

25   be sentenced.  There are collateral issues beyond just the

1       amount of time he's going to spend in jail that are

2       important to him.  I think he has a right to be sentenced

3       today based on the guidelines that have been negotiated by

4       the parties.

5              **THE COURT:**  But you already agree I'm not bound by

6       those.

7              **MR. LAWLOR:**  Well, except I don't agree.  I think

8       you are bound by them now because there was no notice to

9       Mr. Taake that the Court would apply something greater than

10      what is found in the presentence report.

11             **THE COURT:**  That would literally mean a sentencing

12      judge comes into a sentencing hearing and if he hasn't said

13      or she hasn't said to the parties, I'm not sure your

14      estimates in the PSR are right, means it could never come up

15      with a different view or at least could never come up with a

16      view that is bad for the defendant.

17             **MR. LAWLOR:**  No, no.  What it means is, is what

18      happens is the Court reaches out to the parties.

19             **THE COURT:**  I'm saying.  You're fighting my hypo.

20      I'm saying, in your circumstances, a Court could never come

21      into the sentencing hearing and say, Ah-ha, I've looked at

22      this and I don't agree with you because, at that point, the

23      judge hasn't provided sufficient notice.

24             And the judge in those circumstances, absent pre

25      notice before the hearing, could never at the hearing come

1  up with a calculation different from the PSR or the plea

2  agreement.  What is your legal support for that proposition?

3          **MR. LAWLOR:**  Without notice that it was going to

4  be disputed?

5          **THE COURT:**  What case stands for that proposition?

6          **MR. LAWLOR:**  Your Honor, like I said, I didn't

7  research that issue.

8          **THE COURT:**  I know.

9          **MR. LAWLOR:**  Because I didn't get notice to

10  research that issue.

11          **THE COURT:**  You're telling me I can't put this

12  hearing off because it would violate Mr. Taake's due process

13  rights.

14          **MR. LAWLOR:**  That's our argument.

15          **THE COURT:**  What case stands for that proposition?

16          **MR. LAWLOR:**  Like I said, Your Honor, I don't have

17  that case handy because I didn't know to research that

18  issue.

19          **THE COURT:**  Okay.  Here's what I'm going to do.

20          Look, Mr. Taake, you've heard the conversation.  I

21  understand you've been in jail for a long time.  I want to

22  resolve this case for you.  I understand that this was a

23  long negotiation.

24          I understand all of those dynamics.  As you know,

25  I know you've had health issues that I've confronted from

1    time to time.  I get all of that.  I am not trying to delay

2    this case.

3         What's happening though is I have a record in

4    front of me now that almost all judges I know would pick up

5    and say, in doing their job and independently confronting

6    the guidelines, this enhancement, which matters, might

7    apply, not because the government argued for it in its brief

8    and not because it's in the PSR, but because it's obvious to

9    anyone who reads the sentencing guidelines that this is a

10   potential issue.

11        I have an independent obligation to calculate the

12   guidelines right.  That doesn't mean I am bound by them.  It

13   doesn't mean I am going to impose an in-guidelines sentence.

14   It just means that I have to get it right.

15        And I understand that I have raised this question

16   for the first time today, as I have done consistently in

17   many other sentencings where my independent review of the

18   guidelines question led me to conclude that the PSR, plea

19   agreement, government view, defense view, one or all of them

20   was wrong.

21        What I've typically done is, at the sentencing

22   hearing, I have reached my own guidelines, independent

23   guidelines conclusion and then we've gone off.  Sometimes

24   those conclusions are in the favor of the defendant.  And so

25   the defendants are fine with that.

1        Clearly, here, if I were to apply this

2   enhancement, the guidelines range would be higher.  Again, I

3   am not saying I would, therefore, impose a higher sentence.

4   I'm not saying I would do an in-guideline sentence.  But

5   this is an important question for me because I have to get

6   the guidelines right.

7        Because this is coming up for the first time, I

8   well understand and nothing I was asking Mr. Lawlor should

9   suggest that I think he should have come in ready to fight

10  this question.  That's not because I think I had an

11  obligation to notify him under the due process clause or

12  otherwise of that but because, just as a practical matter,

13  the parties were disputing a different question.  But there

14  is this one.

15        It seems to me that the only fair thing to do,

16  from an applying-the-guidelines-correctly approach, is to

17  defer the sentencing hearing to allow Mr. Lawlor to come up

18  with all of the arguments that he has about notice,

19  applicability of the guidelines, facts, everything that he

20  would want to say to me in advance of that hearing -- of the

21  continued hearing.

22        And, Mr. Lawlor, to include, you know, Judge, you

23  can't do anything now because you didn't provide us notice

24  before and your new notice doesn't cure things.  I mean, you

25  know, the notice between today and the next day doesn't cure

1   anything.

2          You can make that argument, of course, the

3   argument that bodily injury means something different, the

4   argument that the facts don't support the enhancement, the

5   argument that the parties have somehow bound me to not apply

6   it, the argument that the government breached the plea

7   agreement.

8          And maybe even reach out to the government to say,

9   Hey, in light of what Judge Nichols is possibly thinking, we

10  want to take another crack at this.  I don't know.

11         But it seems to me the one thing that would be

12  unfair, in light of what's going on, is for me to hold today

13  that the evidence establishes beyond a preponderance that

14  the enhancement applies because you haven't had a shot at

15  that question.  So I'm going to give you that shot and to

16  work through all these other issues.

17         So we're going to continue the sentencing hearing.

18  I'm just going to say, again, based on the government's

19  brief and the victim impact statement, it's like clear as

20  day to me that the enhancement applies.  And the enhancement

21  matters a lot here, and it would make the offense level here

22  higher than anything that's in any other paper.

23         The defendant has not had an opportunity to

24  contest that potential conclusion and it should have that.

25  And so I think the only fair and just outcome here is to

1      continue the sentencing hearing.

2              So, Mr. Lawlor -- Mr. Lawlor, I don't want to

3      interrupt.  Please, if it would be helpful to keep

4      conferring, please.

5              **MR. LAWLOR:**  Court's indulgence for one moment,

6      please.

7              **THE COURT:**  Please.

8          (Discussion off the record.)

9              **MR. LAWLOR:**  Your Honor, Mr. Taake wants to

10     proceed to sentencing today.  He understands that the Court

11     is, in all likelihood, going to apply the three-level --

12     it's not a departure but, for whatever -- lack of a better

13     term, this three-level upward departure.  So, you know, he's

14     prepared to go forward.

15             I will say that my position, for the record, is

16     that the government has not proved causation.  It cannot

17     without breaching the agreement.  So the Court should not

18     apply that.  But regardless, Mr. Taake is here.  Mr. Madiou

19     and I have spent a lot of time with him recently.  He has

20     friends here and it's his desire to get sentenced today.

21             **MS. MUMMA:**  Your Honor, as Your Honor has said, a

22     plus-three enhancement is quite significant and, given

23     Mr. Lawlor's statements, I do think it's prudent to take

24     some time to brief this for Your Honor.  We're not going to

25     object to going forward today, but I think the correct

1    approach here is to delay at least for a week.

2             **MR. LAWLOR:**  Your Honor, the government wants to

3    delay so that they can breach the agreement.

4             **THE COURT:**  Mr. Taake, I understand your desire to

5    do the full sentencing today.  The thing is a whole bunch of

6    arguments have been made about whether I have the power to

7    decide this question or whether the evidence supports the

8    conclusion that seems at least potential here.

9             And while, of course, the guidelines aren't

10   binding, I have to consider them.  And the difference in the

11   guidelines ranges that are on the table would be either 46

12   to 57 months, 63 to 78 months or 87 to 108.  That's not

13   because of this one issue but because we have both the

14   acceptance of responsibility issue and the bodily injury

15   question.

16            At least in theory, the gap in the guidelines

17   outcomes here is, low end, it goes from 46 to 87 months,

18   that's a 41-month difference, and 57 to 108 on the high end.

19   Those are huge differences.  I am not comfortable winging

20   this.  I understand all -- I completely understand all of

21   the reasons you would like to get this over with.

22            But because I have an independent obligation to

23   ensure that my guidelines calculation is correct or that I

24   have the power to engage in the inquiry that I think I

25   should engage in, notwithstanding Mr. Lawlor's arguments,

1    and because this matters a lot here, this is not a one-level

2    enhancement possibly where the results in guidelines ranges

3    are otherwise overlapping with some non-overlapping portions

4    on the top and bottom.  There's big differences here.

5              And I haven't -- certainly haven't felt myself

6    bound to the guidelines in any January 6 case but they

7    matter.  So I do not feel comfortable doing this today,

8    notwithstanding the defendant's request to proceed to

9    sentencing.

10             So I am -- and the government, I think, is

11   generally supportive of this.  I am continuing the

12   sentencing.

13             So, Mr. Lawlor, do you want an opportunity to

14   advocate in advance of that next -- of the continued

15   sentencing for the various positions you've taken today?

16        **MR. LAWLOR:**  I want to argue against the

17   continuance, Your Honor, because --

18        **THE COURT:**  That has been denied.  We are

19   continuing.  The question is when we reset the sentencing --

20        **MR. LAWLOR:**  Well, can I make my record at least,

21   Your Honor?

22        **THE COURT:**  Of course.

23        **MR. LAWLOR:**  You already said, Your Honor, that

24   you were applying the enhancement.  You already said that.

25        **THE COURT:**  No, I didn't.

1    **MR. LAWLOR:**  Yes, you did.  You already said that

2    the facts here clearly support this.  The government has

3    already said that it applies.  You suggested that I

4    wasn't -- and the government said plainly that I'm not

5    entitled to any more notice than I should have had.

6           Mr. Taake's the only person who's impacted by

7    this, and it's his desire to go forward today.

8           So I am at a complete loss why we are not going

9    forward when Mr. Taake is the only person here --

10          **THE COURT:**  Because you have held -- I'm sorry.

11          **MR. LAWLOR:**  -- with a dog in this fight.

12          **THE COURT:**  You have argued to me today that, if I

13   were to apply the enhancement, I would be acting unlawfully.

14   You've made that argument today.  You've thrown a bunch of

15   arguments against the wall with zero support, but I am

16   concerned that I am acting unlawfully if I reach that

17   outcome because you've teed it up.

18          I want to make sure that, if I apply the

19   enhancement, I am not doing something wrong.  And to be very

20   clear, I haven't said I believe, in fact, the enhancement

21   applies.  I said there's a lot to suggest it does.  But I

22   was certainly open to the proposition that you would come in

23   and say, Ah-ha, there's a huge hole in the government's

24   evidence.

25          **MR. LAWLOR:**  Well, I have already made that

1    argument.  There is a huge hole that the government is not

2    going to rectify between now and the time we go back.

3            **THE COURT:**  No.

4            **MR. LAWLOR:**  So this is further a prejudice to

5    Mr. Taake because now the government can fully breach the

6    plea agreement by filling the hole in the causation gap that

7    exists as we stand here now.  So it's just further prejudice

8    to Mr. Taake that the record that exists now is only going

9    to get worse for him.

10           **THE COURT:**  Okay.  Is there anything else you'd

11   like to make with respect to -- statements with respect to

12   the record on the continuance question?

13           **MR. LAWLOR:**  No, Your Honor.

14           **THE COURT:**  Okay.

15           I'm continuing the sentencing.  But that still

16   poses the question to you, Mr. Lawlor, Do you want to submit

17   anything to me in advance of the continued sentencing to

18   support the various positions you've articulated today?

19           **MR. LAWLOR:**  I certainly want to reserve that

20   right, Your Honor, yes.

21           **THE COURT:**  Could you please just speak into the

22   microphone?

23           **MR. LAWLOR:**  Forgive me.

24           I certainly want to reserve that right, yes,

25   Your Honor.

1          **THE COURT:**  All right.  So I'd like to build some

2     time in for that.  And I'm happy to hear from you on any and

3     all arguments, including ones that, perhaps, after research,

4     you conclude apply.

5          Why don't we do this.  I would like a brief from

6     Mr. Taake, Mr. Lawlor and Mr. Madiou by May 10th with -- let

7     me put it this way, no later than May 10th on any and all

8     arguments you would like me to be reflecting on as I

9     consider, at the continued sentencing hearing, whether I

10    have the authority to and whether I -- whether the facts

11    establish the enhancement that we've been talking about.

12         The government can file a brief on May 17th.  I do

13    think Mr. Lawlor is very right that the government is

14    constrained to some extent by the plea agreement, and I have

15    every expectation that the government will adhere to the

16    plea agreement.

17         And it may be that the government says, on

18    May 17th, we take no position on any of this stuff.  We

19    leave it up to your discretion, Judge Nichols.  And then,

20    when we come into the sentencing hearing, I will be, to some

21    extent, operating independently in the sense that I'm having

22    to figure it all out myself about my authority and the

23    applicability of the enhancement.  But as I said, I have an

24    independent obligation to do much of that anyway and I am

25    happy to do so here.

1          So assuming the government files -- well, May 10th

2    will come and go.  May 17th will come and go.  Maybe nothing

3    is filed.  Maybe things are filed.  But the sentencing

4    hearing will be the week of May 20th, which, while I get is

5    a four-week delay here, it seems to me that, in the scheme

6    of things, at least from my perspective, it will ensure that

7    I get what may be easy or what may be extremely complicated

8    questions correct.

9          Ms. Mumma, when -- yeah, I apologize.

10        (Brief pause.)

11         Could the parties do some time on the 23rd?

12         Ms. Mumma, are you available on the 23rd?

13         **MS. MUMMA:**  Yes, Your Honor.  I can do any time

14   that day.

15         **THE COURT:**  Mr. Lawlor and Mr. Madiou, are you

16   available at some point on the 23rd?

17         **MR. LAWLOR:**  Yes, Your Honor.  I have a Zoom

18   sentencing at 1:30, so if we could start at either early or

19   after 2:30.

20         **THE COURT:**  Would 10 a.m. be early enough for you,

21   Mr. Lawlor?

22         **MR. LAWLOR:**  Yes, Your Honor.

23         **THE COURT:**  All right.  So we're going to continue

24   the sentencing hearing in this matter till 10 a.m. on the

25   23rd.  And I'll hear from the parties maybe on the 10th and

1    the 17th and we'll take this up then.

2            **MS. MUMMA:**  Your Honor, one other small issue

3    while we're here.  The defendants filed their brief by

4    sending it to chambers along with a motion to seal.  I don't

5    know if Your Honor wants to resolve that now.  They didn't

6    ask for the government's position.

7            And our position is that the sentencing memorandum

8    should not be sealed in its entirety.  We don't disagree

9    that the portions discussing Mr. Taake's medical concerns

10   can be redacted but, in my experience, the bar is pretty

11   high to have an entire filing sealed.

12           **THE COURT:**  Do you object to meeting and

13   conferring with Mr. Lawlor to see if you can reach agreement

14   on a redacted copy?

15           **MS. MUMMA:**  Of course not, Your Honor.  That would

16   be fine.

17           **THE COURT:**  Why don't we do this then.  As to the

18   brief that the defendant submitted to be filed under seal,

19   the parties shall meet and confer and submit to Ms. Moore by

20   April 29th a redacted version where as much as possible will

21   be made public with the personal stuff redacted.

22           And to the extent that there are disagreements,

23   you can note them and I'll resolve them, and we'll get

24   something on the public record by the 29th.  Okay?

25           **MS. MUMMA:**  Thank you, Your Honor.

1          **THE COURT:**  So the motion will be granted in part,

2     and exactly what that means will be determined after this

3     meet and confer outcome.  Okay?

4          Anything else from the government's perspective?

5          **MS. MUMMA:**  No, Your Honor, thank you.

6          **THE COURT:**  Mr. Lawlor, anything else from your

7     perspective?

8          **MR. LAWLOR:**  No, Your Honor.

9          **THE COURT:**  Thank you, all.

10     (Proceedings concluded at 3:09 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                     **C E R T I F I C A T E**

2

3          I, **Lorraine T. Herman, Official Court Reporter,**

4    certify that the foregoing is a true and correct transcript

5    of the record of proceedings in the above-entitled matter.

6

7

8      ___May 9, 2024___              __/s/  Lorraine T. Herman___
            **DATE**                        **Lorraine T. Herman**
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25