UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | 21-cr-498 (CJN) |
| | : | |
| **ANDREW TAAKE,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
SUPPLEMENTAL SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this Response to Defendant Andrew Taake's Supplemental Sentencing Memorandum. ECF No. 80. Following the April 24, 2024 hearing in the above-captioned matter, the Court gave the parties the opportunity to brief the issues of whether the Court has the authority to *sua sponte* apply the three-level bodily injury enhancement under U.S.S.G. § 2A2.2(b)(3)(A) and whether the record—including the PSR, the Victim Impact Statement, and the parties' briefs and exhibits—supports its application. In his latest submission, Taake contends (1) that the record does not support the enhancement's application; (2) that the Court lacks the authority to apply the enhancement because, in his view, it did not provide Taake with adequate notice of that possibility, in violation of due process; and (3) that, in responding to the Court's questioning about the enhancement, the government violated the Plea Agreement.

The government will not address, or take a position on, the bodily injury enhancement's applicability or factual predicate. That is an issue that the Court raised *sua sponte* at the April 24 hearing and an issue that the government addressed at the hearing only in response to the Court's questioning, as is permitted by the Plea Agreement (*see* ECF No. 67, ¶ 6). The government maintains its recommendation of 78 months of imprisonment—a recommendation that is based on

1

an advisory Guidelines range that does *not* include the bodily injury enhancement. The government, however, addresses Taake's legal claims regarding notice and his allegations of breach. Those legal arguments lack support in law or the record, and the Court should reject them.

## I.  PROCEDURAL HISTORY

On October 29, 2021, a federal grand jury returned a Superseding Indictment charging Taake with eleven counts, including Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. § 111(a)(1) and (b) (Count Three). On December 20, 2023, Taake pleaded guilty to Count Three pursuant to a plea agreement. *See* ECF No. 67. Under the applicable sentencing Guidelines, the Plea Agreement calculated the Adjusted Offense Level to be 26. *Id.* at 3. As the Court is aware, however, given Taake's post-plea statements, the government and the Probation Office now concur that a three-level adjustment for acceptance of responsibility—which was contemplated in the Plea Agreement—is no longer warranted. ECF. Nos. 71 at 10, 74 at 30. Accordingly, the government and the Probation Office maintain that the applicable Adjusted Offense Level should be 26, rather than 23.

After several continuances, sentencing in this matter commenced on April 24, 2024. Without objection, the Court accepted the factual findings contained within the PSR regarding the circumstances of the offense. ECF No. 80-1 at 5–6. The Court moved next to the sentencing Guidelines calculations. The Court first acknowledged the parties' dispute over the acceptance of responsibility points. The Court then, per its independent obligation to calculate the Guidelines, raised an issue that had not been briefed or raised by either party: the applicability of the three-level increase for bodily injury under U.S.S.G. § 2A2.2(b)(3)(A). Following a lengthy exchange between the Court and the parties, the Court continued sentencing to allow the issue to be briefed. Sentencing is currently set to resume on June 5, 2024.

## II.    TAAKE RECEIVED MORE THAN ADEQUATE NOTICE

Taake contends that because the Court did not provide him notice of the potential application of the bodily injury enhancement before sentencing, the Court cannot now—even after a six-week continuance—apply the enhancement without violating Taake's due process rights. Although the government is **not** advocating for the bodily injury enhancement to apply (consistent with its contractual obligations as set forth in the plea letter), it is permitted, in response to the Court's directives to the parties, to explain why Taake's legal argument regarding due process is meritless.

A defendant has a right to due process when entering a plea of guilty, *Brady v. United States*, 397 U.S. 742, 755 (1970), as well as throughout the sentencing stage, *United States v. Doe*, 934 F.2d 353, 356 (D.C. Cir. 1991). But neither the Due Process Clause nor the Federal Rules of Criminal Procedure require the district court to provide notice of a defendant's potential sentencing Guidelines calculations and respective range before a plea *or* sentencing.

A defendant is not entitled to a pre-plea preview of the court's Guidelines calculations because without the PSR and briefing from the parties, "uncertainty bedevils any estimate of a sentence" and "the district court is simply not in a position at that time to confirm a prediction made by counsel." *United States v. Horne*, 987 F.2d 833, 837–38 (D.C. Cir. 1993). That reality is, in part, why courts use the Rule 11 colloquy at a plea hearing to *dissuade* a defendant from relying on potentially false projections from his attorney or others regarding his likely sentence. *Id.*[1]

Similarly, nothing in Federal Rule of Criminal Procedure 32 or decisional law imposes a general requirement that courts preview their Guidelines calculations to criminal defendants before

---

[1] The Court conducted an exhaustive Rule 11 colloquy at Taake's December 20, 2023 change-of-plea hearing. *See* Minute Entry Dec. 20, 2023. Taake has not argued—and does not now argue—that the colloquy was defective.

sentencing. The one exception to that rule comes from the Supreme Court in *Burns v. United States*, 501 U.S. 129, 135 (1991), which held that a defendant must be afforded reasonable notice before a court may impose an upward *departure—i.e.*, a deviation from the Guidelines range based on Guidelines policy—on grounds absent from the PSR or other pre-sentencing filings. *Burns*, 501 U.S. at 138. And, in 2002, Congress codified that holding in Federal Rule of Criminal Procedure 32(h).

The *Burns*/Rule 32(h) notice requirement, however, has not been extended to other sentencing areas. To the contrary, in *Irizarry v. United States*, the Supreme Court limited its holding in *Burns* by holding that while notice is a prerequisite for an upward departure, it is unnecessary for an upward variance (a deviation from the Guidelines range based on the 18 U.S.C. § 3553(a) factors). 553 U.S. 708, 716 (2008). It did so, at least in part, because, post-*Booker*, there is no longer an "expectation subject to due process protection . . . that a criminal defendant would receive a sentence within the presumptively applicable Guidelines range." *Id.* at 713. Taake's notice claims *a fortiori*: if a defendant is not entitled to notice of an upward variance, he is not entitled to notice of an adjustment. *See United States v. Plasencia*, 886 F.3d 1336, 1345 (11th Cir. 2018).

A notice requirement for adjustments would also make little sense as a matter of first principles. The Guidelines "define specific and finite factors warranting the application of an upward or downward adjustment to a defendant's otherwise applicable sentencing range." *Plasencia*, 886 F.3d at 1344. Therefore, when, as in this case, the facts and circumstances in the record "afford a defendant notice that he engaged in conduct that may result in the application of a Guidelines enhancement, the court need not provide additional notice of its intention to apply the enhancement *sua sponte*—the Guidelines themselves provide adequate notice." *Id.* (rejecting

the defendant's argument that the sentencing court deprived him of adequate notice or an opportunity to be heard by imposing an enhancement *sua sponte*); *see also United States v. Knight*, 76 F.3d 86, 88 (5th Cir. 1996) ("[I]f the defendant has actual knowledge of the facts on which the district court bases an enhancement or a denial of a reduction, the Sentencing Guidelines themselves provide notice of the grounds relevant to the proceeding."); *United States v. Canada*, 960 F.2d 263, 266–67 (1st Cir. 1992) (noting that even where a PSR states there is "no basis" for a particular sentencing enhancement, "the guidelines themselves provide notice to the defendant" that "he may be called upon to comment" on the enhancement).

In the absence of a notice requirement, the Supreme Court and the D.C. Circuit have suggested that, to ease any concerns regarding a lack of preparedness, a defendant may, in appropriate cases, request a continuance for time to rebut the grounds of an unforeseen upward variance. *Irizarry*, 553 U.S. at 714; *United States v. Miller*, 35 F.4th 807, 817 (D.C. Cir. 2022). The same logic again applies here: *a fortiori*, a defendant facing an unforeseen adjustment may, in some cases, properly request a continuance, but nothing more.

Here, in light of Taake's concerns regarding notice at the April 24, 2024 sentencing, the Court *sua sponte* continued this matter for one month to ensure that "*if*" it applied the enhancement, "it is not doing something wrong," taking care to clarify that the Court had yet to make a decision. *See* ECF 80-1 at 39–40 (emphasis added). Not only did the Court continue the sentencing *sua sponte*, it continued it with the government's support *over Taake's objection*. *Id.* at 39. And several weeks later, it granted Taake's unopposed motion to continue the matter for an additional two weeks to give Taake more time to draft his Sentencing Supplement. *See* Minute Entry 5/13/24. Therefore, even if a notice issue once existed—it never did—the six-week continuance would have long since cured it.

### III. THE GOVERNMENT HAS NOT BREACHED THE PLEA AGREEMENT

Next, Taake contends that the government has breached the term of the Plea Agreement that precludes the parties from seeking an offense-level calculation that differs from the Plea Agreement's Estimated Offense Level. *See* ECF. No. 67 at ¶ 4(D). In this two-paragraph argument, Taake omits relevant precedent, misconstrues the record, and disregards the explicit terms of the Plea Agreement.

It is common ground that, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *United States v. Henry*, 758 F.3d 427, 431 (D.C. Cir. 2014) (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). In interpreting the terms of a plea agreement, contract principles govern. *Id.* When considering whether a breach occurred, courts will "look to the reasonable understanding of the parties and construe any ambiguities in the agreement against the government." *Id.* But it is ultimately the defendant's burden to prove any breach by the government. *United States v. Ahn*, 231 F.3d 26, 35 (D.C. Cir. 2000).

Furthermore, regardless of the Guidelines calculations set forth in a plea agreement, if the plea agreement is entered under Federal Rule of Criminal Procedure Rule 11(c)(1)(B), as was the case here, the agreement's calculations do not bind the court. Rather, the sentencing court has an independent obligation to calculate the Guidelines range correctly at the outset of the sentencing hearing. *United States v. Turner*, 21 F.4th 862, 864 (D.C. Cir. 2022). Consistent with that obligation, the Court, not the government, determines whether a particular sentencing enhancement applies. *United States v. Mosquera-Murillo*, No. 13-CR-134, 2018 WL 6267765, at *6 (D.D.C. Nov. 30, 2018). And it makes that decision based upon "the information presented by the government, the Probation Office, and defense counsel, *regardless of whether the government*

*itself seeks that adjustment.*" *Id.* (emphasis added).

As Taake argues here, breach of a plea agreement may occur when the government requests or advocates a sentencing enhancement precluded by the plea agreement. *See United States v. Felder*, 563 F. Supp. 2d 160, 166 (D.D.C. 2008). But merely providing information to the court that may lead the court to apply a particular sentencing enhancement does not amount to a breach. *Mosquera-Murillo*, 2018 WL 6267765, at *7. On the contrary, the government has an affirmative obligation to disclose all relevant factual information to a sentencing court. *See e.g., United States v. Ahn*, 231 F.3d 26, 38 (D.C. Cir. 2000) ("At [the defendant's] sentencing hearing, the Government had a duty to provide relevant information about whether [the defendant] obstructed justice, even though it had agreed not to take a stand on whether he should receive a sentence enhancement."); *United States v. Casillas*, 853 F.3d 215, 218 (5th Cir. 2017) (stating that "the Government does not have a right to make an agreement to stand mute in the face of factual inaccuracies or to withhold relevant factual information from the court") (internal quotations and citation omitted). That's for good reason: whether or not it supports a particular adjustment under the advisory Guidelines, the information can be—and often is—probative of the "nature and circumstances of the offense" or "the history and characteristics of the defendant," which are key sentencing considerations under 18 U.S.C. § 3553(a)(1).

Relatedly, the government does not breach a plea agreement by responding honestly and exhaustively to a district court's direct questions regarding the applicability of a sentencing enhancement, even if the government is otherwise precluded from advocating for by the plea agreement. *See United States v. Maldonado*, 215 F.3d 1046, 1052 (9th Cir. 2000). That is because "honest response of the government to direct judicial inquiry is a prosecutor's professional obligation that cannot be barred, eroded or impaired by a plea agreement." *Id.*; *see also United*

7

*States v. Langley*, 584 F. App'x 570, 571 (9th Cir. 2014) ("Because the prosecutor had a duty to respond candidly to the district court's questioning about [the enhancement], and because she did so while still fully supporting the sentencing recommendation previously agreed to, there was no breach.").

The terms of the Plea Agreement in this case expressly track these well-settled principles. In relevant part, the agreement's "Reservation of Allocution" section provides:

> The Government and your client reserve the right to describe fully, both orally and in writing, to the sentencing judge, the nature and seriousness of your client's misconduct, including any misconduct not described in the charges to which your client is pleading guilty, to inform the presentence report writer and the Court of any relevant facts, to dispute any factual inaccuracies in the presentence report, and to contest any matters not provided for in this Agreement. The parties also reserve the right to address the correctness of any Sentencing Guidelines calculations determined by the presentence report writer or the court, ***even if those calculations differ from the Estimated Guidelines Range calculated herein. In the event that the Court or the presentence report writer considers any Sentencing Guidelines adjustments, departures, or calculations different from those agreed to and/or estimated in this Agreement***, or contemplates a sentence outside the Guidelines range based upon the general sentencing factors listed in 18 U.S.C. § 3553(a), ***the parties reserve the right to answer any related inquiries from the Court*** or the presentence report writer and to allocute for a sentence within the Guidelines range, as ultimately determined by the Court, even if the Guidelines range ultimately determined by the Court is different from the Estimated Guidelines Range calculated herein.

ECF No. 67 at ¶ 6 (emphasis added). In other words, Taake's Plea Agreement expressly permits the parties to answer any questions of the Court about any sentencing guideline enhancement that the Court may consider *sua sponte*.

The government's statements at the April 24 hearing were consistent with these settled legal principles and the Plea Agreement. At the hearing, the Court teed up a line of questions for the government, prefacing the inquiry with this statement: "Let me ask you this question. I am posing this question to you. And my view is that, by answering it, *you would not be in breach of the plea agreement.* I don't know how much comfort that gives you." ECF No. 80-1 at 25

(emphasis added). The Court then asked the government whether the record before the Court established "beyond a preponderance that Mr. Taake sprayed the . . . bear spray, in Officer Tate's face." ECF No. 80-1 at 25. After the government responded affirmatively, the Court asked the government to specifically "draw the legal conclusion about the preponderance," to which the government responded, "Yes, I do believe that we've met that standard." *Id.* In other words, in response to a direct question from the Court, the government agreed that the raw facts established at the change-of-plea hearing and in the parties' sentencing memoranda—*i.e.*, that Officer N.T. was sprayed with bear spray—also proved by a preponderance of the evidence the elements of the bodily injury adjustment. *See United States v. Stover*, 329 F.3d 859 (D.C. Cir. 2003) ("Facts at sentencing must be proven by a preponderance of the evidence.").

      The Court then concluded that "the government's view, *in response to a question from me . . . is that the record establishes a three-level enhancement*" and, in the form of a question, confirmed that "*the government isn't advocating [the court] apply [the enhancement]?*" ECF. No. 80-1 at 26 (emphasis added). The government answered yes, confirming for the record that the government was *not* advocating for the application of the enhancement. *Id.* The Court then noted that it had an "independent obligation" to calculate the sentencing calculations correctly, with which the government agreed. *Id.* And the Court then asked a final question of the government: whether, in light of the record, "the only conclusion" it could draw was that it was "obligated to apply the three-level enhancement." *Id.* To that, the government again said yes, noting that because of the Plea Agreement, the government's hands were tied in terms of *advocating* for the enhancement. *Id.* But the government added, in response to Taake's earlier casting of doubts on the established fact that the victim MPD officer in Exhibits 1, 2, and 3 and the writer of the Victim Impact Statement were the same individual, that is, MPD Officer N.T. *See id.*

Contrary to Taake's view, nothing in the above exchange constitutes a breach of the Plea Agreement. Rather, the government merely fulfilled its duty to "respond candidly to the district court's questioning about" both the record and the enhancement, while simultaneously doing nothing to advocate for the enhancement or cast doubt on the fairness of the Plea Agreement. *Langley*, 584 F. App'x at 571.

Taake also notes that, early on in the April 24 hearing, when the Court first suggested that a victim impact statement established the three-level increase for bodily injury under 2A2.(b)(3)(A), the government responded, "Your Honor, I would be happy for you to add the plus three now. But when we were first reviewing this case and we were first discussing plea agreement options, that had not been established at that point." ECF No. 81-1 at 8. Specifically, Taake attempts to characterize this isolated passage in the government's response to the court as something more than "merely tak[ing] the position that the record before the Court established the factual and legal predicates for the enhancement"—*i.e.*, as an effort to "affirmatively advocat[ing] for an enhancement in direct violation of the Plea Agreement." ECF No. 80 at 10.  Taake's argument misapprehends both the record and the plain terms of the Plea Agreement.

As noted, precisely because Guidelines questions can (and often do) arise after a plea is entered, and precisely because everyone recognizes the Court's obligation to independently and accurately determine the applicable Guidelines range, the Plea Agreement accords the parties special latitude in responding to inquiries initiated by the court about unraised Guidelines issues. As described above, it provides: "In the event that the Court . . . considers any Sentencing Guidelines adjustments, departures, or calculations different from those agreed to and/or estimated in this Agreement . . . , the parties reserve the right to answer any related inquiries from the Court." ECF No. . 67 ¶ 6.

Here, the government's statement at issue falls within the ambit of this provision. The government made the statement immediately after—and in response to—the Court's inquiry as to *why* the government was not advocating for the enhancement. Immediately before the government's statement, the Court had asked: "The other question I don't understand is why the government and Probation aren't advocating for a three-level increase for bodily injury under 2A2.2(b)(3)(A). We have a victim impact statement that seems to get you there." The statement Taake now impugns was plainly responsive to the Court's inquiry—and was accurate at that. Especially when viewed in context, the government's response is within the flexible boundaries envisioned by the Plea Agreement for answering Guidelines questions raised *sua sponte* by the Court.

The government also made clear at the hearing, and in this subsequent memorandum, that it is not seeking the bodily injury enhancement. And it will do so once again at the June 5 sentencing hearing. The government maintains its recommendation that the Court impose a sentence of 78 months of incarceration, at the high end of a range (63 to 78 months) that does *not* reflect a bodily injury enhancement. The government has not breached the plea agreement.

IV.   **CONCLUSION**

For these reasons, the Court should reject Taake's claims that he did not receive adequate notice and that the government breached the plea agreement.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: */s/ Madison H. Mumma*
Madison H. Mumma
Trial Attorney

11

Public Integrity Section
Criminal Division, DOJ
1301 New York Ave. NW
Washington, DC 20530
N.C. Bar No. 56546
202-913-4794
madison.mumma@usdoj.gov